Good morning everyone. There are a total of six cases before the panel today. Two of them will be submitted without oral argument later today, just on the briefs. Those are Appeal No. 06-3332, Cook v. Department of Justice, and Appeal No. 07-3198, Marassa v. United States Postal Service. On the four-case argument list, we'll hear argument first, and then Vanieken-Ryals v. Office of Personnel Management. That's Appeal No. 06-3260. Mr. Grady, good morning to you. Welcome. Good morning, Your Honor. Please proceed. Your Honor, I'll just perform. I stand corrected. Please retain your seats. Before we hear argument in the four cases, we have a motion for admission of attorneys to the Bar of this Court, which will be made by our colleague, Judge Kimberly Moore. Thank you, Chief Judge Michelle. Today I'm proud to have my three law clerks here. I move the admission of Antigone Gabriela Priss, who is a member of the Bar in good standing of the Highest Court of Virginia, Andrew Ryan Sommer, who is a member of the Bar in good standing of the Highest Courts of Virginia and the District of Columbia, and Megan Woodworth, who is a member of the Bar in good standing of the Highest Courts of Maryland and the District of Columbia. I have knowledge of their credentials, and I'm satisfied they possess the necessary qualifications. Well, that's the script I was given. I guess the judge has a prerogative to occasionally go off script. And I'd like to say that they're three of the best law clerks I could ever imagine having, and I'm so thrilled that you've worked with me to share my first year on the bench. Thank you. Your motion is granted. We welcome the three lawyers to the Bar of this Court. We thank you for your service as law clerks with Judge Moore and on behalf of the entire court, and we look forward to the day when we may see you at the podium arguing cases yourselves in the future. So we'll now have the administration of the oath by the assistant clerk. Please raise your right hand. Do you solemnly swear or affirm that you will report yourself as a counselor of this court uprightly and according to the law and that you will support the Constitution of the United States of America? I do. Thank you. Thank you, Mr. Kuiper. Now, Mr. Rady, we're back to you. May it please the court, this is a disability appeal. The issue before the court from my point of view is whether or not the administrative law judge can reject psychological and psychiatric testimony of the claimant and subsequently the claimant's testimony besides because there was no objective test supporting their opinion. Well, is it your view that we are reviewing the decision of the administrative judge as opposed to the decision on reconsideration of the Office of Personnel Management? No, that's not correct. The decision of the administrative law judge was simply basically affirmed by the board. That's what we are reviewing. However, I think that to discuss the case, we have to discuss the decision of the administrative law judge. Well, did the administrative judge even have jurisdiction to reach any fact-related issues? I don't think there's ever been a question that the administrative law judge had jurisdiction. Well, why isn't the administrative law judge bound by the case law interpreting the statutory provision that seems to make OPM disability decisions unreviewable? That would seem to mean unreviewable anywhere by anyone. I think the law, referring to a person's medical decision, which says that findings of facts are not reviewable, but that important procedural errors are reviewable, and determinations that go to the heart of the decision are reviewable. But your view started out by saying the administrative judge mislead the evidence. So I'm trying to get you to focus on whether the administrative judge had any right to even be looking at the evidence as against the statutory command reaffirmed by the Supreme Court in the Lindahl decision that seems to say that the determinations related to disability made by OPM are not reviewable later anywhere by anyone. Well, I think they are reviewable. The fact-finding is not reviewable. You can see that. What I'm saying is that disability assessment is not reviewable. It's my position that in this case it is reviewable, that both the OPM and the administrative law judge both completely disregarded the psychological and psychiatric testimony. I don't see how you can say that. They both discussed it at some length. How you can say they disregarded it is just fiction. You don't agree with the way they assessed it. I understand that. But to say they disregarded it, I think, is just not accurate. Well, maybe that's not accurate. What I'm saying is that their reason for rejecting it, that there was no objective evidence, was wrong as a matter of law. Well, what is the law? The law is that particularly in reviewing mental health situations, you don't necessarily have to have so-called objective tests. The clinical testimony of the psychologist or the psychiatrist which is made upon their clinical judgment, that's all you need. This is not a case where you look for x-rays. You certainly can't sustain the position that any opinion by a mental health professional that somebody is disabled entitles that person to a disability pension. That they automatically win if they have a mental health professional who says that in that person's opinion they're disabled. There has to be some assessment of the probative power of the mental health testimony or records. Why didn't we have such an assessment by the initial OPM decision maker, later by the higher level OPM decision maker, and still later by the administrative judge of the American System Protection Board? All three of them discussed the evidence. They all discussed it and they all rejected it because there was no objective evidence. They kept saying over and over again there was no objective evidence. You're asking us to re-weigh that. No, I'm saying that as a matter of law, that's error. That you can't just wipe out the testimony. Frankly, you can wipe out my entire case by saying because there's no objective evidence we won't consider the psychological, we won't consider... But wait a minute. None of the three decision makers said we won't consider. What they said was it's not powerful enough to carry the burden which clearly the applicant has to establish a disabling condition making them unfit to perform the duties of their position. Well, if I may, I'm going to read from what I think is a critical part of the decision of the administrative law judge. He says, the only evidence which supports the appellant's claim of disability is her protracted absence from work. I note that it is well established that an individual's failure to come to work is not quite self-established disability. Of course, I agree. He says, I find the appellant's absences are particularly unpersuasive as proof of the appellant's disability in this case because the necessity of the absences is based on purely subjective medical evidence which are not supported by objective medical evidence. That's an evaluation, and you're asking us to perform a different evaluation. Well, I guess I'm saying that's wrong as a matter of law. The MSB, the decisional law, says that you can't award disability based on subjective evidence. And it further says that you should give great weight to subjective evidence if it's supported by some sort of medical opinion. Of course, we couldn't agree with you if we were in the initial trial. We don't decide that. Well, the statute says you can't afford it. What about the comments made by the administrative judge and perhaps also the earlier decision makers that there was some inconsistency in the assessments by the psychologist, Ms. Nichols, as to prognosis, where in some reports or letters she says the prognosis is good and in others she says the prognosis is poor. In some cases she says the person can't ever come back to work, and in other cases she says it's hopeful he will be able to come back to work. As I recall, the administrative judge was troubled by those inconsistencies. So that's relying on something, I would think, other than, quote, subjective evidence. Well, I guess, again, from my point of view, the testimony of the psychologist at the hearing was very consistent. And she indicated, and there was nitpicking, she indicated in the report that there was progress being made, that she's doing better. That doesn't mean she's able to go back to work. She was doing better than she was before. There's never anything in any of these psychological reports that says my client is capable of going back to work. I don't think there really is any inconsistency in the testimony. I think with all due respect to the administrative judge. But what about the concern expressed by one or more of the three decision makers that the psychiatrist, not the psychologist, but the psychiatrist apparently had not seen the patient very many times and that the, as I recall, there was also a question about the psychiatrist's notes being illegible, indecipherable, unclear. The notes were illegible. But the notes do indicate that she was being seen, that the psychiatrist was providing medications to her. Well, I understand about the three medications, but was there evidence about how many times the psychiatrist saw the patient? We put into evidence all of his office records. I don't think they were in very early on. One of his earlier decisions, there was a comment that they didn't seem to have his records. We did supply one. Can you give me an idea about how many times the psychiatrist saw the patient? All right. All right. I have five. Now, if we were to adopt your view that the administrative judge and perhaps the OPM decision makers were requiring whatever they meant by the phrase objective medical evidence, is that fatal to the decision? How does that comport with the restriction of the statute? Well, from my point of view, what they've all done is they've basically said, my client is not entitled to disability because there's not adequate medical testimony. They've rejected all of the psychiatric testimony. And so it is fatal. There's nothing left in her case. They also rejected all of her own testimony because they said there was not adequate medical testimony to support it. It's the very heart of the whole case. By rejecting her doctors and her own testimony, there's just something left. All right. Perhaps we should hear from the government and then let you return to your vote. Thank you. Thank you, Mr. Griffin. Mr. Dufault. Good morning to you. Good morning. Thank you, Your Honor. I'd like to address the first principle issue in this case, which pertains to jurisdiction and threshold issue. Well, we probably don't need a law lecture on the severe limits of our jurisdiction in light of the very clear commands of the Supreme Court and the equally clear language of the statute itself. But obviously the Supreme Court has said that if the wrong legal standard is applied, that that is reviewable by us. That's correct. So why don't you tell us whether the right or the wrong legal standard was applied and why you think so. Well, the correct legal standards were applied. What Ms. VanEken-Miaz has attempted to do is, her initial brief was based upon an incorrect standard of review and what she's trying to do now is to try to frame her arguments as actually being legal arguments when the Hardin-Solar case is, in fact, an issue placed in evidence. You say that about eight times in different ways in your brief. If we agree with you that what she's arguing is nothing more than the facts, then obviously we have to dismiss this appeal for lack of jurisdiction. But suppose we don't agree with you that she's only arguing the facts and we think that she's also arguing whether an incorrect legal standard, namely a requirement of, quote, objective medical evidence, was applied by the decision-makers, including EJ, in this case. Then what? Well, if, in fact, there was some sort of standard that was announced by the court below, like a carte blanche rule of law that came out and said, we will not accept psychiatric letters, something to that effect, that would, in fact, trigger this court's jurisdiction. But what the court did below was it did apply the carte blanche standards. It stated that she had the burden of proof in her case, the demonstration. But we don't need disputes. She has the burden of proof, so why waste time on that? Well, we're trying to mine the decision for a possible legal issue that was raised. I think the only thing we can rest on right now is Ms. VanEek and Rial's allegation that there was some objective medical evidence standard that was applied, that you could only have objective medical evidence. But that's not what happened below. Well, how do you deal with the language used by the administrative judge where the phrase was used, as I recall, repetitively, about the need for objective medical evidence? Well, Not just meaningless dicta had nothing to do with the ground of the decision? No, that was part of the court's analysis in weighing the facts. It stated there was insufficient objective medical evidence presented. I suppose we could say no objective medical evidence if objective medical evidence means some kind of a physical test, like an x-ray. Right. In the decision below, on page 6, the court goes through the appropriate standards to be applied. On page 10 of the case, the court gives an OPM and the MSPB go into the different facts that were presented, and there's a weighing of those facts. And then at page 16 of the MSPB's decision, they state that OPM analyzed the facts appropriately and that she wasn't entitled to disability retirement. So, below, there wasn't any announcement that you have to have a certain level of objective medical evidence. It's within the MSPB's domain and OPM's domain to look at the evidence and find that the evidence was insufficient. No one can challenge that. Everyone knows there's a common circumstance called failure of proof. He who has the burden of proof is unable to present sufficient evidence to carry that burden. We all know that. It's not being disputed. What Mr. Grady seems to be arguing is that a long yardstick was applied in measuring that evidence. And what our response to that is, when he says a long yardstick was being applied, that that isn't necessarily an inherently factual issue, unless the court below were to state we need a certain disha of objective medical evidence. And the court below didn't say that. Why wouldn't it be a very clunky statement by an initial adjudicator to say I'm hereby announcing a new broad rule that will cover thousands of cases and the rule is blah, blah, blah. I don't remember ever seeing an opinion like that. So, if that's going to be required, then there'll never be a legal error in this kind of case. Because no trial judge or administrative judge is going to announce it in a way that you seem to be suggesting would be required. Right. And if there's a lack there, that's even worse. What do you mean, right? Well, I agree with you. It's rare that you would see something so extreme like that. I thought it wasn't rare. It was never. Well, I'm hesitant to say that's never happened, but I assume that it is in fact rare. What if we read the decisions and are forced to the conclusion that the fatal defect found by the pre-decision makers was the lack of non-subjective medical evidence? Medical evidence not derived from the statements of the patient herself. Well, if there was something that was so explicit like that in the decision, Suppose it's not explicit at all, but it's necessarily implicit. Under your test, apparently that doesn't count. Well, when we look at types of cases where you would have a judge below this kind of evidence, there's different ways they could go about doing that. They could not let it in. That would be the first way it could happen. The person could go before them and say, I've got a letter from the doctor, and I would want this to be part of the record, and they would just not let it in. Let's talk about this case. It was all let in, and then according to Mr. Gray, he was irrationally disregarded, and the main reason, maybe about the only reason given for finding it to have little or no weight is that it all derived from the statements of the patient herself. Well, that's correct, and just in that analysis, you can see that there's weighing you on it. It was accepted into the record. It was considered as it should have been, and then it was determined not to be sufficient to the rise to the level where she would meet a regulatory burden for her to show up upon. Because to rise to that level, it would need to be bolstered by some kind of test like an MRI. But there was nothing stated in the record that that's what they needed. I mean, if you saw something like that... Well, what do you suppose the administrative judge then meant by the phrase objective medical evidence? That's just a phrase that's commonly used in the MSPB throughout its decisions, that there's different kinds of... Well, how do you understand it to me? Simply medical evidence. I mean, if you have an objective... Well, a testimony of a psychologist, a testimony of a psychiatrist, and their reports and notes and letters are certainly medical evidence. Yes. But they're subjective in the sense they're all derived from what the patient said, as opposed to objective, apparently meaning derived from something other than what comes out of the mouth of the patient. That's correct. Any time you have a doctor that's going to offer an opinion, that's inherently subjective, but it comes based upon his medical expertise. But in MSPB decisions and in these kinds of cases, it's often referred to as objective medical evidence. That simply means medical evidence. Medical evidence could be from a doctor that reviewed the patient. It could be from an X-ray. It could be from some sort of study that was conducted or a test. But that's what constitutes objective medical evidence. There was no... There's nothing in here. You keep asking me to try to find something in here that would show that there was some sort of de facto test that was applied, as they suggest, but it's not there, and they can't trigger this court's jurisdiction based upon a false premise, the false premise being that some sort of de facto test was announced. That just didn't happen here. The court and the OPM looked at all the evidence that was provided, both from her, from the doctors. They had testimony in the MSPB that was taken from four people, and they analyzed and weighed the evidence and found that she didn't meet her burden of demonstrating that she was... Because what? Because there was an insufficiency of proof. Because what? Because there wasn't enough... What was insufficient about it? What was the missing piece that if it had been present, she would have won? What they were looking for was some sort of nexus that would explain what her current condition was and how that would prevent her from doing her job, not just now but also into the future. Could it be that the AJ at OPM Below simply didn't believe her in light of the facts and therefore discounted the medical evidence or considered the medical evidence in conjunction with those facts and said, well, okay, there's medical evidence, but it did all come from her? And so they sort of weighed the medical evidence in that regard, and perhaps they had loose language of the objective, but could that be the way that you want us to look at it, that really what they were doing is they were saying, look, she applied for early retirement first and didn't come up with a disability claim until after the fact and that they maybe doubted her credibility, which it seemed like it indicated to me throughout the opinion itself that they simply didn't believe that she had this and that the medical evidence that she presented wasn't sufficient to overcome that and it was a weighing of all of that. Is that sort of the way you look at it? Well, yes, that is the way we look at it. There was no specific credibility determination made. There was one point where the MSPB stated that there seemed to be evidence of record that after she applied for early retirement and then in the midst of her applying for disability retirement, she was actually applying for other jobs. But there was no specific credibility determination made where the judge said, we don't believe that her testimony is credible. But what the court did do, as is evident from the record, is it took in all of this evidence, both from her, from her husband, from her supervisor, from her psychologist, from her treating physician, looked at all of these notes and progress notes and arrived at the decision that her case didn't meet her burden in demonstrating that she was entitled to disability retirement and therefore it ruled against her. The husband testified at the MSPB hearing. Why doesn't that cure the problem that otherwise exists, that all the data is coming out of the mouth of the claimant herself? Well, it doesn't cure the problem if the fact finder doesn't think that there's sufficient evidence to demonstrate that she's entitled to the relief that she's seeking. But then it gets away from the subjective problem of all the information originating with the patient-slash-claimant herself. But what it does, though, is it starts drifting into the realm of non-medical evidence, which is less probative than medical evidence that's presented. Her husband is exactly an objective person. Not necessarily. And he doesn't have any medical expertise that was found by the court below. He was just able to offer his account of what she was going through and what the nature of her work was like. Why would it take medical expertise to assess a nervous condition manifested by throwing up in the car on the way to work? Well, it's hard. In some cases, you might have a case that's presented where you have sufficient non-medical evidence that does meet the person's burden. Now, the fact finder in this case found that that wasn't the case here. But that couldn't possibly happen. But again, in this case, all the evidence that was presented was reviewed and it was found to not be sufficient. And these issues, in fact, aren't reviewable by this court. And for that reason, under 8347C, this court lacks jurisdiction to consider the claims that are raised in Ms. Monique and Ms. Riehl's brief. And then the alternative group, plus the court, affirmed the decision of the MSB, which did appropriately weigh the facts. Did the MSPB have jurisdiction to assess the facts? Yes. The MSPB, under 8347D, could review her case. Now, the factual findings of OPM, which were supplemented by MSB, aren't reviewable by this court. But it was within the domain of the MSPB to review her case, yes. To review the facts of her case? Yes. Well, they reviewed what OPM looked at. And that was within their domain to do that. Because D says what? D provides them with the ability to review OPM decisions pertaining to disability retirement. Okay. Doesn't D say only when a disability claim has been sustained or found? I don't have it right in front of me. This is not a case where she... I'm looking at D-1. ...thought she was disabled. This is a case where the agency didn't know whether she was disabled or not. She's urging that she's disabled. So I think what Judge Moore may be suggesting, or what I would suggest, is D doesn't apply here. Because the trigger for D is that the agency has found the employee to be disabled. Well, in this case, well, there wasn't a specific finding made by the agency that she was disabled. This isn't a Brunner-type case. And she wasn't... So she's not... There's not a rebuttable presumption that she is disabled. It's in effect right here. They didn't know whether she was or she wasn't. And... And how does D apply? Well, you're right. D would apply simply if there was a finding. Okay. So if it's not within the exception of D, then why wasn't the administrative judge equally precluded by the statute in the Supreme Court from assessing the facts the way you're urging we're precluded? Well, arguably it is precluded because OPM will tell you... Well, not arguably. Why isn't it as clear that the facts shouldn't have been tampered with by the AJ as that we shouldn't have tampered with the fact-finding? Well, the MSPB has found in Chavez v. OPM that it could be the facts. But that was the case that came out in 1980,  and so we do see instances where the MSPB does actually allow extra facts to come in. But the ultimate arbitrary of the facts, as you point out, was OPM, and Lindahl makes that clear. Well, I don't understand what you're saying. It would seem to me that the statute as interpreted in Lindahl by the U.S. Supreme Court would totally block the administrative judge from reassessing the facts. Why would that not be the case? Well, again, if these decisions can be appealed to the MSPB, if they can look at OPM decisions... They can be appealed here, too, but only on extremely limited collateral matters like applying the wrong legal standard. Right. Why doesn't that same limitation apply to the administrative judge of the MSPB? Well, it would, but if the MSPB... The MSPB does have the authority to open up the case and look at it and to allow in further evidence to analyze the nature of her claims that were raised. If she states that some sort of objective test was applied below that somehow runs about the statute's governing her case, then the MSPB can open it up and look at it and analyze those facts. Counsel, could it be that Lindahl speaks specifically using the language of judicial review and it may be that the preclusions of fact review in Lindahl are limited to the judicial sense? Yes, yes. And an agency like the MSPB is not... They could still look at it under their authority to open up these cases. All right. Thank you. Thank you. Just a few comments, Robert. The first comment is that we have a situation where we have the OPM and the administrative people have an opportunity to review the disability application and if they have some question with the medical information which has been supplied, they have the right to obtain their own medical testimony. You would think if they were concerned with Dr. Pickles, Dr. Rumler, they would say, well, we want you examined. Why is this issue on the other foot? When you lost in the judgment of the initial decision-maker at OPM, that decision-maker made very clear what she thought the deficiencies in the evidence were. And so when you sought reconsideration, why didn't you provide additional evidence such as an affidavit from the husband along the lines of his later testimony in front of the administrative judge? Burden's on you. You're warned by the OPM lower-level person. What the problem is, the gap to be filled has been identified. You have the opportunity to fill it. If you don't fill it, why should you be heard to complain later? Well, the truth of the matter is I wasn't there. But, you know, the client was just going along with what she was being told and she certainly was being led to believe that she could supply additional medical information, that she could have her psychologist testify, and that was certainly the impression everybody was under. We had a whole hearing and nobody even raised any questions about that. So that's what happened. I guess the problem I have is that we had administrators completely rejecting medical testimony and they're not doctors. They just threw it all out on this objective criteria. An administrative judge is not a doctor either. If you're going to require that the adjudicator be a psychiatrist or a psychologist, you're going to have to convince Congress to change the entire system. No administrative judge out of nearly a hundred for the MSTV, to my knowledge, is a psychiatrist or a psychologist. So that can't be a meaningful test. That's not the test. The test is what testimony you're reviewing. It seems to me, what should have been in the record, is some medical testimony from the OPM or somebody that the ALJ could review. If you're only reviewing one side of the case, how can you just toss it all out on this basis of no objective evidence? And that's what happened. My client, from my point of view, never got a fair shot at this whole thing. They just rejected all testimony under this no objective evidence rule and happened to produce objective evidence from a psychologist or from a psychiatrist. What about the reliance on the views of Mr. Emerson, the supervisor of Ms. Lindy? It seems that at least the administrative judge relied in part on his assessment that up to the time of her departure from work, she seemed to be able to function competently and do her job adequately despite whatever emotional challenges she might be facing. There was a crisis the day before, the day she left work. All the medical and psychological testimony is after that. Of course, he has no knowledge of that. He has no knowledge of how she's been for the last 18 months. That may be, but why isn't the adjudicator entitled to rely on the observations of Emerson that, as far as he can see, she was functioning as a competent employee up to the period of her departure? Well, he can say that. The issue is not up to that. The issue is, well, everybody agreed that the day she left was turmoil, but the issue is, after that, because of that, was she in such a state that she couldn't go back to work? That's the issue. Could she reapply to OPM? Not the rest of my knowledge. Why not? Subsequent time has gone by. There may be a great deal more psychiatric or psychological evidence. Maybe her condition has even gotten worse. I don't know. But suppose that there are further developments. What would bar a subsequent application based on additional newly discovered evidence? You might want to look into it. All right. We'll take the case under review.